UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA,

              Plaintiff,                          13-cv-912 (NSR)

    -against-

                                             MEMORANDUM OPINION
LUIS A. ORTIZ, DAMON ZIPPO, individually     AND ORDER
and as Administrator of the Estate of Samantha
M. Zippo, EDWINA GARAYUA, DELIA I.
DEJESUS, and JUAN L. ORTIZ

              Defendants.
------------------------------------------------------------X
NELSON S. ROMÁN, United States District Judge

Plaintiff Prudential Life Insurance Company of America ("Prudential") commenced the instant action in interpleader against all potential claimants to death benefits payable upon the death of Samantha M. Ortiz, née Zippo ("Samantha" or "Decedent"), under a life insurance policy governed by the Servicemen's Group Life Insurance Act ("SGLIA"), 38 U.S.C. §§ 1965–1980A. Two groups of claimants are involved: (a) Samantha's parents, Edwina Garayua ("Garayua") and Damon Zippo ("Zippo"), and the Estate of Samantha M. Zippo ("Estate") (collectively, "Zippo Defendants") for which Zippo is the administrator; and (b) the insured servicemember himself, Samantha's husband Luis A. Ortiz ("Ortiz"), and his principal beneficiaries under the policy, namely, his mother Delia DeJesus ("DeJesus") and brother Juan L. Ortiz ("Juan Ortiz") (collectively, "Ortiz Defendants"). Zippo as administrator of the Estate asserts cross-claims against Ortiz for battery, assault, intentional infliction of emotional distress, wrongful death (joined by Garayua and Zippo individually), and Samantha's personal injuries and conscious pain and suffering. Pursuant to an order of the Court entered January 15, 2014, (see Doc. 52), Prudential has deposited with the Court the disputed benefits, plus interest, and

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/13/2014

has been dismissed from the case.

The Zippo Defendants now move, pursuant to Federal Rule of Civil Procedure 56, for summary judgment, asserting that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law both to the insurance proceeds and to a liability judgment on their cross-claims. The Zippo Defendants aver that the "Slayer's Rule" under the pertinent Veterans Affairs regulation and federal common law precludes the Ortiz Defendants from recovering the death benefit. The Zippo Defendants also contend that, as Ortiz is precluded from relitigating liability for Samantha's death, the only material dispute remaining in the cross-claims concerns damages. For the following reasons, the Zippo Defendants' motion for summary judgment is granted only with respect to Ortiz's liability on the wrongful death cross-claim, and otherwise denied.

## I. THE FACTS

The facts are gleaned from the parties' 56.1 statements,[1] affidavits, and exhibits submitted with this motion and the pleadings, and are not in dispute except where noted.

Ortiz was a private in the United States Army. As such, he qualified for and received a life insurance policy offered by Prudential under SGLIA. On September 17, 2009, while stationed at Fort Benning, Georgia, Ortiz designated as principal beneficiaries under the policy DeJesus (62%) and Juan Ortiz (38%), and as contingent beneficiaries his father Antonio Ortiz (75%) and Samantha (25%)—described at the time as a "friend" on the designation form. At some time before or after this designation, Ortiz and Samantha were married. Thus, Samantha became eligible for and held a life insurance policy under SGLIA in the amount of $100,000. By

---

[1] The Court notes its displeasure with the parties' failure to follow the Court's individual rules of practice with respect to Rule 56.1 statements and counterstatements of material facts, (Rule 3.G.iii.).

statute, Samantha was required to designate Ortiz as her beneficiary.

By October 10, 2010, the couple was living at Fort Polk, Louisiana, where Ortiz was stationed. On that date, Samantha died from a gunshot wound to the chest. According to Ortiz, his shotgun accidentally discharged when he placed it on the floor, and he called 911 for treatment. (Ortiz Aff. ¶ 5–6.) Samantha's death certificate describes how the injury occurred as "accidental shotgun [discharge] in home."

A general court-martial proceeding commenced. Ortiz was charged with three counts under the Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. §§ 801–946: (1) "unlawfully kill[ing]" Samantha "by negligently shooting" her, "which conduct was prejudicial to good order and discipline" under UCMJ Article 134, 10 U.S.C. § 934; (2) "unlawfully kill[ing]" Samantha "by culpable negligence" under UCMJ Article 119, 10 U.S.C. § 919; and (3) "fail[ing] to obey a lawful general regulation . . . by failing to register his privately owned firearm(s)" under UCMJ Article 92, 10 U.S.C. § 892. (Murtaugh Decl. Ex. A ("Report of Results of Trial").) Ortiz pled guilty to charges 2 and 3, whereas charge 1 was dismissed. At sentencing on May 3, 2011, Ortiz was demoted, discharged for bad conduct, and sentenced to 38 months imprisonment at the Northwest Joint Regional Correctional Facility located at Joint Base Lewis McChord in the State of Washington. Ortiz was released in September 2013.

In January 2011, while the court-martial was unresolved, Zippo apparently contacted Prudential to argue that Ortiz and his family should not be paid the death benefits because Ortiz was responsible for Samantha's death. On April 20, 2011, Zippo renewed this contention by letter. On or about November 3, 2011, DeJesus filed a claim with Prudential for the death benefits. On or about November 4, 2011, Juan Ortiz also filed a claim with Prudential for the death benefits. On November 16, 2011, Prudential wrote DeJesus informing her that Zippo

3

lodged a protest challenging her entitlement to the benefits.  Prudential asserted that Ortiz was disqualified from receiving the benefits.  Prudential also notified DeJesus that it would pay the claim unless Zippo filed suit by December 16, 2011, to prevent it from processing the payment.

On December 14, 2011, Zippo as distributee of the Estate filed suit in Westchester County Supreme Court against Prudential for recovery of the death benefits.[2]  Subsequently, on July 11, 2012, the Westchester Surrogates Court granted Zippo letters of limited administration.  The Surrogate authorized Zippo "to commence an action to obtain on behalf of the [E]state the proceeds of a life insurance policy payable by Servicemen's Group Life Insurance and/or to commence an action to recover damages for the [D]ecedent's wrongful death."  (Murtaugh Decl. Ex. F.)  On February 7, 2013, Prudential commenced the instant action in interpleader.  The Zippo Defendants first brought their cross-claims against Ortiz on September 19, 2013, in their Answer to Prudential's Second Amended Complaint.

## II. SUMMARY JUDGMENT STANDARD

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of any genuine dispute or issue[3] of material fact by pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact,"

---

[2] The Zippo Defendants assert that this action commenced in October 2012, citing Exhibit G to the Murtaugh Declaration.  However, Exhibit G clearly shows "12/14/2011" as the filing date.

[3] The Court uses "issue" and "dispute" interchangeably.  Former Rule 56(c) and case law prior to the 2010 amendment utilized "issue," whereas the amendment substituted the term "dispute" because it "better reflects the focus of a summary judgment determination."  Fed. R. Civ. P. 56 advisory committee's note on 2010 amendments.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party may support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B).

Once the moving party has fulfilled its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine dispute of material fact.  Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013); *Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).  Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor."  *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005)).  In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249; *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) ("The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact."), nor is it to determine a witness's credibility, *Anderson*, 477 U.S. at 249.  Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial."  *Id.* at 250.

"[S]ummary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated."  *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985); *see also ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 150 (2d Cir. 2007) ("[I]ntent is always a subjective matter of

5

inference and thus rarely amenable to summary judgment." (quoting *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980))).  However, "[s]tatements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."  *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998))).

## III. PROCEEDS OF SERVICEMEMBERS' LIFE INSURANCE POLICY

Federal law governs the distribution of life insurance proceeds for policies issued under the SGLIA.  *See Ridgeway v. Ridgeway*, 454 U.S. 46 (1981).  In general, proceeds must be paid in the following order of preference: named beneficiaries; the widow or widower; children and descendants of deceased children; parents of the deceased; the executor or administrator of the estate; and next of kin as designated by the law of the decedent's state of domicile.  38 U.S.C. § 1970(a).  However, if payment to any person otherwise entitled "is prohibited by Federal statute or regulation, payment may be made in the order of precedence as if such person had predeceased" the insured.  *Id.* § 1970(b).

### A. Prior Common Law Development

Prior to 2012, when the U.S. Department of Veterans Affairs ("VA") promulgated a new regulation, *see* Slayer's Rule Exclusion, 77 Fed. Reg. 60,304–07 (Oct. 3, 2012) (codified at 38 C.F.R. § 9.5(e)), federal common law developed to bar beneficiaries who killed the insured from entitlement to death benefits.  *See N.Y. Mut. Life Ins. Co. v. Armstrong*, 117 U.S. 591, 600

(1886).  In this situation,

> public policy founded upon the equitable principle that no person should be permitted to profit from his own wrong intervene[d] to prevent such a beneficiary from taking the proceeds of the insurance, unless the beneficiary was insane at the time, or the killing was accidental, or was committed in self-defense.

*Shoemaker v. Shoemaker*, 263 F.2d 931, 932 (6th Cir. 1959), *partially quoted in Prudential Ins. Co. of Am. v. Tull*, 690 F.2d 848, 849 (4th Cir. 1982); *see also Prudential Ins. Co. of Am. v. Athmer*, 178 F.3d 473, 475–76 (7th Cir. 1999) ("The principal that no person shall be permitted to benefit from the consequences of his or her wrongdoing has long been applied to disqualify murderers from inheriting from their victims, whether the route of inheritance is a will, an intestacy statute, or a life insurance policy."); *Burns v. United States*, 200 F.2d 106, 107 (4th Cir. 1952), *aff'g United States v. Burns*, 103 F. Supp. 690 (D. Md. 1952) (civil finding that widow was "guilty of intentional and felonious slaying of the insured," even after criminal acquittal, barred her from recovery of benefits).  As support for this rule, sometimes referred to as the "Slayer Rule" or "Slayer's Rule," the courts in *Shoemaker* and *Tull* cited, *inter alia*, Restatement of Restitution §§ 187 and 189, which expressly prohibit murderers from receiving property by will, inheritance, and insurance benefits.  According to the comments, the rule does not apply if the slayer is guilty only of manslaughter.  Restatement (First) of Restitution §§ 187 cmt. e, 189 cmt. d.

   In addition to barring an intentional killer from receiving death benefits, federal common law determined that in some situations the slayer's family should be barred, especially where the slayer would indirectly benefit.  For example, in *Prudential Insurance Co. of America v. Tolbert*, 320 F. Supp. 2d 1378, 1380 (S.D. Ga. 2004), the husband of a servicemember was under prosecution for her murder and had already been excluded from receiving the benefits.  His

mother and brother, who were other named beneficiaries, were also excluded because he could later inherit the money from them under a will or intestacy. *Id.* at 1381–82; *cf. Athmer*, 178 F.3d at 476 (discussing Illinois case disallowing children from inheritance from mother because estate included money inherited from grandmother whom they had murdered).

Although the common law Slayer's Rule apparently did not apply to accidental killings and manslaughter convictions, one federal district court found that the rule barred a woman convicted of involuntary manslaughter from receiving death benefits. *Prudential Ins. Co. of Am. v. Neal*, 768 F. Supp. 195, 197–98 (W.D. Tex. 1991) (wife shot and killed servicemember husband). The *Neal* court cited for its holding both *Tull* and *Shoemaker*, focusing on the idea that "[n]o person should be permitted to profit from his own wrong" but ignoring *Shoemaker*'s exceptions and citations to the Restatement. *Id.* at 198. By contrast, all other federal cases which the parties cite applying the Slayer's Rule under federal common law,[4] and cases cited in *Shoemaker*,[5] excluded only beneficiaries convicted of murder or otherwise found to have intentionally killed the insured.[6]

---

[4] *N.Y. Mut. Life*, 117 U.S. at 600; *Athmer*, 178 F.3d at 475–76; *Tull*, 690 F.2d at 849; *Shoemaker*, 263 F.2d at 932; *Beck v. Downey*, 198 F.2d 626 (9th Cir. 1952); *Tolbert*, 320 F. Supp. 2d at 1380.

[5] *Burns*, 200 F.2d at 107; *United States v. Leverett*, 197 F.2d 30, 31–32 (5th Cir. 1952) (remanding case due to insufficient evidence that ex-wife did not kill insured intentionally as grand jury declining to indict was not binding in civil proceeding); *United States v. Kwasniewski*, 91 F. Supp. 847, 852–53 (E.D. Mich. 1950) (finding beneficiary intentionally killed insured even after criminal acquittal based on insanity defense)

[6] One district court within the Second Circuit also acknowledged that under the SGLIA lower federal courts "have consistently held that, as a matter of federal law, a beneficiary convicted of murdering the insured is precluded from receiving the insurance proceeds." *Mendez-Bellido v. Bd. of Trs. of Div. 1181, A.T.U. N.Y. Emps. Pension Fund & Plan*, 709 F. Supp. 329, 332 (E.D.N.Y. 1989) (determining the right to pension benefits under an ERISA plan where decedent's wife pled guilty to first-degree manslaughter in New York).

**B. 2012 Governing Regulation**

As previously mentioned, the statutory scheme provides for recovery by a beneficiary unless a statute or regulation precludes it. 38 U.S.C. § 1970(b). Whereas before only federal common law addressed the Slayer's Rule, the VA recently promulgated a regulation, taking effect on November 2, 2012, which applies to all claims arising after or unpaid as of that date. Under the regulation, death benefits from a policy governed by the SGLIA cannot be paid to anyone "convicted of *intentionally and wrongfully killing* the decedent or determined in a civil proceeding to have intentionally and wrongfully killed the decedent." 38 C.F.R. § 9.5(e)(2)(i) (emphasis added). The regulation also precludes payments to "[a] member of the family of a person described in paragraph (e)(2)(i) . . . who is not related to the decedent by blood, legal adoption, or marriage." *Id.* § 9.5(e)(2)(iii).

In proposing the regulation, the VA acknowledged that although the SGLIA does not expressly adopt the Slayer's Rule, federal common law developed to "generally preclude[] killers from benefitting from their victims' deaths" in the SGLIA context. Slayer's Rule Exclusion, 76 Fed. Reg. 77,455, 77,455 (proposed Dec. 13, 2011) (citing *Athmer*, 178 F.3d at 476; *Tolbert*, 320 F. Supp. 2d at 1380–81). The VA decided not to sift through the variations of unlawful homicide as described in the various states, and instead "chose[] to generally designate the unlawful homicide that triggers the slayer's rule as 'intentionally killing' the decedent." *Id.* at 77,456 (citing *Jones v. Prudential Life Ins. Co.*, 814 F. Supp. 500, 501 (W.D. Va. 1993) ("The true test [of whether the Slayer's Rule applies] is whether the beneficiary intentionally took the life of the insured.") (internal quotation marks and citation omitted)). After the public comment period, the VA added the words "and wrongfully" to the proposed rule as recommended by the Vietnam Veterans of America, "because those words speak to the heinous aspect of the slayer's

act that violates public policy." Slayer's Rule Exclusion, 77 Fed. Reg. 60,304, 60,305 (Oct. 3, 2012). The "intentionally and wrongfully" language is also consistent with the Slayer's Rule applicable to other VA benefits under 38 C.F.R. § 3.11. *See id.*; 76 Fed. Reg. at 77,455 (citing *Lofton v. West*, 198 F.3d 846, 850 (Fed. Cir. 1999) (finding § 3.11 to be "an entirely reasonable gap-filling measure")).

The Zippo Defendants argue that the regulation meant to codify the rule as applied in *Neal*, i.e., that someone guilty of involuntary manslaughter must be precluded from receiving benefits. However, the VA ignored *Neal* in promulgating the rule and instead expressly approved the test of the beneficiary's intent in *Jones*. 76 Fed. Reg. at 77,456. The VA otherwise cited only *Athmer* and *Tolbert*, wherein the beneficiaries barred from receiving the death benefits were guilty of murder, not involuntary manslaughter. *Id.* at 77,455. Based on the previously developed common law, the regulation at issue is certainly a reasonable gap-filling measure tracking language already adopted in a similar regulation. *See Lofton*, 198 F.3d at 850. Thus, to grant summary judgment to the Zippo Defendants, there must be undisputed evidence in the record that Ortiz "intentionally and wrongfully killed" his wife Samantha.

The Zippo Defendants rely exclusively on the Report of Results of Trial, which acknowledges Ortiz pled guilty to unlawfully killing Samantha "by culpable negligence." (Murtaugh Decl. Ex. A.) Under military criminal jurisprudence, "negligence" is "conduct that 'involves the creation of substantial and unjustifiable risk of which the person *should be aware* in view of all the circumstances.'" *United States v. Oxendine*, 55 M.J. 323, 325 (C.A.A.F. 2001) (quoting *United States v. Brown*, 22 M.J. 448, 450 (C.M.A. 1986)). "Culpable negligence" is "a negligent act or omission accompanied by a culpable disregard for the foreseeable consequences to others of that act or omission." *Id.* Thus, a charge of involuntary manslaughter may be based

10

on "a negligent act or omission which, when viewed in the light of human experience, might foreseeably result in the death of another." *Id.* (quoting Manual for Courts-Martial pt. IV ¶ 44c(2)(a)(i)) (internal quotation marks omitted).

Under this definition, conviction of the wrongdoer does not depend on his or her intent to cause death or serious bodily harm. Thus, a guilty plea to involuntary manslaughter under the Uniform Code of Military Justice, without more,[7] is insufficient to show in the instant action that Ortiz intentionally and wrongfully killed Samantha. Discovery is needed to make this determination. *See, e.g.*, *Burns v. United States*, 200 F.2d 106, 107 (4th Cir. 1952); *United States v. Leverett*, 197 F.2d 30, 31–32 (5th Cir. 1952). Accordingly, as questions of material fact remain to be determined, the Zippo Defendants fail to demonstrate entitlement to the insurance benefits, and summary judgment must be denied.[8]

## IV. CROSS-CLAIMS AGAINST LUIS A. ORTIZ

The Zippo Defendants bring a state law cross-claim for wrongful death against Ortiz. Zippo as administrator of the Estate also brings cross-claims for assault, battery, intentional infliction of emotional distress, and a claim for conscious pain and suffering. The Zippo Defendants assert entitlement to summary judgment on all cross-claims based upon Ortiz's guilty plea to involuntary manslaughter.[9] Ortiz, in opposition, asserts that the Court has no jurisdiction

---

[7] For instance, a transcript of the plea allocution, wherein Ortiz may or may not have admitted to acting with intent, is not included in the exhibits.

[8] The Court need not discuss at this time whether DeJesus or Juan Ortiz are entitled to the insurance benefits. *Compare Prudential Ins. Co. of Am. v. Kulik*, No. 3:12-CV-625-J-99TJC-JRK, 2013 WL 3974579, at *2–3 (M.D. Fla. July 31, 2013) (finding slayer's sister, as decedent's sister-in-law, to be related to decedent by marriage under 38 C.F.R. § 9.5(e)(2)(iii)), *with Tolbert*, 320 F. Supp. 2d at 1380 (mother and brother of slayer-widower barred from receiving benefits).

[9] The Zippo Defendants fail to mention the assault claim in their moving papers, but because it appears in their Answer, the Court assumes their motion as also seeking summary judgment for assault.

to decide these state law cross-claims, because (1) the claims are not based on federal law, (2) the parties are not diverse, (3) there is purportedly no ancillary jurisdiction for personal injury claims under Rule 13(g) where the original claim concerns liability under an insurance policy, and (4) Zippo exceeded the limitations of his Letter of Administration by bringing cross-claims instead of commencing an action to recover damages for wrongful death.

### A. Jurisdiction over Cross-Claims

"A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action . . . ." Fed. R. Civ. P. 13(g). In the Second Circuit, cross-claims arise from the same transaction or occurrence "when there is a 'logical relationship' between the [cross-]claim and the main claim." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209 (2d Cir. 2004); *cf. Federman v. Empire Fire & Marine Ins. Co.*, 597 F.2d 798, 813 (2d Cir. 1979) ("[T]he Rule 13(a) test for determining a compulsory counterclaim is identical to the Rule 13(g) test for cross-claims."), *quoted in Mount Vernon Fire Ins. Co. v. A.S. Constr., Inc.*, No. 05 CV 3190 (ARR) (KAM), 2007 WL 2275242, at *2 (S.D.N.Y. Aug. 7, 2007). "[A]n absolute identity of factual backgrounds" is not required, yet "the essential facts of the claims [must be] so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Jones*, 358 F.3d at 209 (internal quotation marks and citations omitted). "Where [an] injured party's claim of negligence involves a factual investigation unrelated to the insurance dispute in the main action, the asserted cross-claim has been held to arise out of a distinct transaction or occurrence." *Mount Vernon Fire*, 2007 WL 2275242, at *3 (citations omitted). "However, in some circumstances, the issues raised by the negligence cross-claim may overlap to such an extent with those raised by the original claim that the cross-claim

is proper." *Id.* at *4 (citing 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1432, at 291–92 (4th ed. 2010)).

In the instant action, Prudential's interpleader claim asks the Court to determine who is entitled to receive death benefits under the insurance contract. This requires the Court to determine whether or not Ortiz intentionally and wrongfully killed his wife. Each of the Zippo Defendants' cross-claims seeks damages from Ortiz based on the same occurrence which made the insurance proceeds payable: a shotgun blast that struck Samantha in the chest and killed her. Liability under each tort theory depends upon the same facts that will determine entitlement to receive insurance proceeds. For three of the cross-claims, liability also depends upon Ortiz's state of mind at the time the shotgun went off, the issue which also must be determined to resolve the interpleader claim. Thus, the Court finds that the cross-claims arise from the same transaction or occurrence as Prudential's initial claim. Accordingly, the Court has jurisdiction over them.

The instant action is distinguishable from the two cases upon which Ortiz relies. In *Allstate Insurance Co. v. Daniels*, 87 F.R.D. 1, 2 (W.D. Okla. 1978), following an automobile accident, an insurance company sought a judgment declaring that the driver of one car, who was not the insured, was not covered under the policy, whereas co-defendant injured parties brought a negligence cross-claim against the driver who was allegedly not covered by the insurance policy. In *Mount Vernon Fire*, 2007 WL 2275242, at *1–2, the insurance company sought a judgment declaring it had no obligation to defend its insured construction company under the policy, whereas neighboring property owners brought a cross-claim for negligence against the construction company. In each case, liability under the policy was distinct from liability to the injured parties for negligence.

### B. Zippo's Power as Administrator to Bring Cross-Claim

Zippo was authorized by the Westchester County Surrogate "to commence an action to recover damages for the [D]ecedent's wrongful death." (Murtaugh Decl. Ex. F.) Here, Zippo has instead brought the wrongful death claim as a cross-claim. The purpose of Rule 13(g) in allowing related cross-claims is "to avoid multiple suits and to encourage the determination of the entire controversy among the parties before the court with a minimum of procedural steps." 6 Wright, Miller & Kane, *supra*, § 1431, at 267–68 (citing *(Am.) Lumbermens Mut. Cas. Co. of Ill. v. Timms & Howard, Inc.*, 108 F.2d 497, 499 (2d Cir. 1939) ("[C]ross-claims between the defendants, when properly sued together, afford a means of determining the entire controversy with a minimum of procedural steps."); *State Teachers Ret. Bd. v. Fluor Corp.*, 589 F. Supp. 1268, 1269–70 (S.D.N.Y. 1984) (quoting 6 Wright & Miller § 1431)).

Ortiz cites no authority to support his assertion that Zippo cannot bring a wrongful death claim on behalf of the Estate as a cross-claim instead of filing a separate action in the state courts. Thus, in light of the purpose of Rule 13(g) and in the interest of judicial economy, the Court finds its jurisdiction over the cross-claims is unaffected by Zippo's appropriate use of the cross-claim in the instant case.

### C. Collateral Estoppel and Proof of Liability

The Zippo Defendants contend that, due to his criminal conviction of involuntary manslaughter, Ortiz is precluded from litigating his liability on their cross-claims.

> "Issue preclusion, or collateral estoppel, . . . bars litigation of an issue when (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in a previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."

*Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013) (quoting *Ball v. A.O. Smith Corp.*, 451

14

F.3d 56, 59 (2d Cir. 2006)); *accord Allen v. McCurry*, 449 U.S. 90, 94–95 (1980). Under Second Circuit precedent, "a criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel . . . in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case." *New York v. Julius Nasso Concrete Corp.*, 202 F.3d 82, 86 (2d Cir. 2000) (quoting *United States v. Podell*, 572 F.2d 31, 35 (2d Cir. 1978)); *accord United States v. Karron*, 750 F. Supp. 2d 480, 487 (S.D.N.Y. 2011).

Ortiz pled guilty to involuntary manslaughter. Thus, he admitted (1) he acted negligently by creating a substantial and unjustifiable risk of which he should have be aware, (2) he displayed a culpable disregard for the foreseeable consequences of his actions, as the manner in which he handled his shot gun might foreseeably have resulted in someone's death, *see United States v. Oxendine*, 55 M.J. 323, 325 (C.A.A.F. 2001), and (3) he caused Samantha's death, (Murtaugh Decl. Ex. A).

Here, to determine whether collateral estoppel bars Ortiz from relitigating liability on the Zippo Defendants' counterclaims, the Court will compare the findings of the court martial with the findings a jury would need to make to find Ortiz liable on each cross-claim. *See Karron*, 750 F. Supp. 2d at 487. The Court will also examine the limited evidence to determine whether the Zippo Defendants are entitled to summary judgment on each cross-claim.

### 1. Wrongful Death

In New York, a decedent's representative may bring a wrongful death action to recover for pecuniary injury to the distributees due to the decedent's death. N.Y. E.P.T.L. § 5-4.1(1) ("The personal representative, duly appointed in this state or any other jurisdiction, of a decedent who is survived by distributees may maintain an action to recover damages for a wrongful act, neglect or default which caused the decedent's death against a person who would have been

15

liable to the decedent by reason of such wrongful conduct if death had not ensued."). The elements of a wrongful death action are: "(1) the death of a human being born alive; (2) a wrongful act, neglect or default of the defendant by which the decedent's death was caused, provided the defendant would have been liable to the deceased had death not ensued; (3) the survival of distributees who suffered pecuniary loss by reason of the death of decedent; and (4) the appointment of a personal representative of the decedent." *Slobin v. Boasiako*, 119 Misc. 3d 1110(A) (Sup. Ct. Nassau Cnty. 2008) (citing *Chong v. N.Y.C. Transit Auth.*, 83 A.D.2d 546, 547 (2d Dep't 1981)).

Here, the first two elements overlap with the findings of the court martial based on Ortiz's guilty plea that he negligently caused Samantha's death. Thus, Ortiz is collaterally estopped from relitigating his negligence under the wrongful death statute. Furthermore, summary judgment as to liability on this claim is proper. The first, third, and fourth elements are easily satisfied, as Samantha died, she left her parents as distributees, and Zippo was given letters of administration to recover damages for her wrongful death. As to the second element, because Ortiz's neglect injured Samantha and caused her death, she would have had a negligence claim against Ortiz had she survived. *Cf. Allen v. Cnty. of Westchester*, 172 A.D.2d 471, 471 (2d Dep't 1991) (decedent had no viable claims for own voluntary intoxication). Accordingly, summary judgment on this claim is granted.

### 2. Conscious Pain and Suffering

A claim for conscious pain and suffering is a personal injury action to recover damages for a decedent's injuries before death and must be brought on behalf of the decedent's estate. *Heslin v. County of Greene*, 14 N.Y.3d 67, 77 (2010) (citing N.Y. E.P.T.L. § 11-3.2(b)). This cause of action is "separate and distinct from one for wrongful death." *Lancaster v. 46 NYL*

*Partners*, 228 A.D.2d 133, 138 (1st Dep't 1996); *accord Heslin*, 14 N.Y.3d at 77.  Recovery of damages for a decedent's conscious pain and suffering "requires proof that the injured party experienced some level of cognitive awareness following the injury."  *Sanchez v. City of New York*, 97 A.D.3d 501, 506 (1st Dep't 2012) (quoting *Williams v. City of New York*, 71 A.D.3d 1135, 1137 (2d Dep't 2010)).  This requirement deviates substantially from the elements of involuntary manslaughter, for which a victim's cognitive awareness is irrelevant.  Thus, collateral estoppel is inapplicable.

A grant of summary judgment as to liability is also inappropriate based on the evidence in the record.  The Zippo Defendants proffer no evidence that Samantha was conscious before death.  *Contra Sanchez*, 97 A.D.3d at 502 (citing evidence that pedestrian struck by sanitation truck was groaning, had eyes open, and was in and out of consciousness).  The only evidence tending to demonstrate that Samantha experienced cognitive awareness after being shot was proffered by Ortiz, who avers the prosecutor in his court martial told him that Samantha had told the attending medic that the shooting was an accident.  (Ortiz Aff. ¶ 6.)  As no one with personal knowledge provides evidence of Samantha's cognitive awareness, Ortiz's affidavit is insufficient to resolve this issue of material fact.

### 3. Intentional Infliction of Emotional Distress

Intentional infliction of emotional distress has four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress."  *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993); *accord Capellupo v. Nassau Health Care Corp.*, 97 A.D.3d 619, 623 (2d Dep't 2012).  Aside from the requirement of causation, these elements do not overlap with the charge to which Ortiz pled guilty, involuntary

manslaughter due to culpable negligence.  Severe emotional distress is not the same injury as death.  Nor does "disregard of a substantial probability," otherwise described as "reckless disregard," equate to negligence.  *See Schultes v. Kane*, 50 A.D.3d 1277, 1279 (3d Dep't 2008).  Thus, collateral estoppel is inapplicable.

Furthermore, summary judgment as to liability must be denied.  The Zippo Defendants proffer absolutely no evidence demonstrating the existence of emotional distress.  Nor do they proffer evidence demonstrating Ortiz's conduct was extreme and outrageous.  To succeed on this claim, "the conduct [must] ha[ve] been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.* at 122 (quoting *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303(1983)).  As the Zippo Defendants do not proffer the transcript of the plea allocution or any other testimony, there is no evidence detailing the actions Ortiz actually took.

### 4. Battery and Assault

A claim for battery exists where a person intentionally touches another without consent, "either personally or by means of an instrumentality."  *Aberbach v. Biomedical Tissue Servs., Ltd.*, 48 A.D.3d 716, 718 (2d Dep't 2008).  Similarly, a claim for assault exists where a person intentionally attempts or threatens to cause injury or commit a battery.  *Stanley v. Amalithone Realty, Inc.*, 31 Misc. 3d 995, 1006 (Sup. Ct. N.Y. Cnty. 2011).  To recover damages for assault, "there must be proof of physical conduct placing the plaintiff in imminent apprehension of harmful contact."  *Id.* (citing *Holtz v. Wildenstein & Co.*, 261 A.D.2d 336, 336 (1st Dep't 1999)).  These tort theories are distinguishable from involuntary manslaughter due to criminal negligence because they both require an intentional act.  Assault is also distinguishable because of the requirement to show apprehension of contact by the injured party.  Thus, except to the extent that

a battery claim requires touching someone without consent, collateral estoppel is inapplicable. Summary judgment also must be denied. As with the death benefits, for which discovery is needed to develop the record, there is no evidence tending to show Ortiz intentionally touched Samantha or intentionally threatened to cause her injury.

## VI. CONCLUSION

For the reasons stated above, the Zippo Defendants' motion for summary judgment is GRANTED in part—only as to liability on their cross-claim for wrongful death—and otherwise DENIED. The Clerk of Court is respectfully directed to terminate this motion (Doc. 42). The parties are directed to submit a completed Case Management Plan to chambers by March 21, 2014.

Dated: March 13, 2014
White Plains, New York

SO ORDERED:

_____ 3/13/14
NELSON S. ROMÁN
United States District Judge